KENNESAW MILLS CO. v. WALKER.

JENKINS & SON v. SAME.

1. In supplementary proceedings separately taken by two judgment creditors. against the same defendant, an order was passed in each case, referring it to a referee to take the examination, the referee in both cases being the same person. *Held*, that the two cases might be heard together.

2. A referee, no matter how limited his powers, must sometimes necessarily decide questions of law arising in the progress of the inquiry he is ordered to make.

3. A Circuit·judge at his chambers in a county other than that in which the judgment debtor resides, may pass the final order in supplementary proceedings, the examination of the defendant having been had in his own county before a referee appointed for that purpose.

4. An order in supplementary proceedings for the surrender of a sum of money ascertained to be in the defendant's hands, and for imprisonment in case of refusal, is not a "punishment without trial by jury," nor "imprisonment for debt," within the meaning of those terms as used in the constitution.

5. But in an order for the delivery of money by the judgment debtor to the receiver, it is error to incorporate a direction for imprisonment in case of refusal; the application for attachment should be made after the time fixed for the execution of the order, and on rule to show cause.

6. The order to pay over should direct a payment of so much only as is necessary to satisfy the debts proven, and the costs of the proceeding.

Before WALLACE, J., Spartanburg, January, 1880.

These were supplementary proceedings in the two cases of the Kennesaw Mills Company against W. E. Walker, and T. Robert Jenkins & Son against the same defendant. The opinion states the case.

*Mr. J. B. Cleveland,* for appellant.

*Messrs. Evins, Bomar & Simpson, J. S. R. Thomson,* contra.

March 24th, 1883. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. In each of these cases judgment was rendered against the defendant, W. E. Walker, in the county of Spartanburg; one for $147 and costs, and the other for $67.42 and costs. Executions were issued against the property of the defendant and returned by the sheriff "unsatisfied." Supplementary proceedings in each case were instituted, in which Judge Wallace, at chambers, made similar orders, appointing Charles P. Wofford, Esq., referee, and directing the defendant to appear before him at Spartanburg Court House, on May 8th, 1879, and answer concerning his property, and abide such order as might then or thereafter be made in the premises.

The same referee being appointed in both cases, to hear the matter at the same time and place, he considered both the cases together. At the outset a motion was made to vacate the service of the orders upon the defendant, which the referee refused, and after an examination of the defendant and taking other testimony, and giving very careful consideration to the facts, he reported on May 23d, 1879, that the defendant had in his possession or under his control money at least to the amount of $1,097.50, which he unjustly refused to apply to his debts. The report also stated that there were other outstanding judgments against the defendant, amounting to the sum of $4,864.19.

As Judge Wallace was the judge of the Circuit to which Spartanburg belongs, and had ordered the proceedings, the report was made to him at his home in Union county, and he, at chambers, after full argument and consideration, confirmed the report of the referee, appointed Charles P. Wofford, Esq., receiver, with

all the rights and powers of a receiver under the law, and then ordered as follows: "It is further ordered that William E. Walker, the said defendant, do pay over to Charles P. Wofford, the said receiver, the aforesaid sum of one thousand and ninety-seven and fifty one-hundredths dollars, now in said defendant's hands, within two days after personal service of this order upon said defendant, or that in default of such payment, (such default to be evidenced by the affidavit of said receiver, served upon the sheriff of Spartanburg county,) that said sheriff do arrest said defendant, William E. Walker, and commit and imprison him in the common jail for said county as for a contempt of court, until he shall comply with this order, or unless sooner discharged by order of court. It is further ordered that from the amounts which under this order may come into his hands, the said receiver do first pay the costs and disbursements of these proceedings, to be taxed by the clerk of the court, and that he do retain the balance thereof subject to the further order of this court."

To this decree the defendant excepted, and appeals to this court, charging error as follows:

1. " That he had not jurisdiction to pass such order at chambers in Union county, when the record showed upon its face that the judgment debtor was ordered to appear and answer in Spartanburg county, and the proceedings were had to enforce the payment of an execution issued from the Court of Common Pleas for Spartanburg county, based on an action tried in that county and not lodged in the county of Union.

2. " His Honor, the Circuit judge, erred in holding that the orders passed by Judge Pressley were not an estoppel to a further proceeding herein, when the orders passed by Judge Pressley are still of force and not appealed from.

3. " Because his Honor erred in holding that the cases could be heard together, and that the same examination could be used in both cases.

4. " Because of error in that the Circuit judge held that the referee could decide questions of law, when the report and evidence submitted showed upon its face that the referee passed upon matters of law to which objection was made at the time, and argued before him and exceptions taken.

5. " Because the order passed by his Honor, January 27th, 1880, is unconstitutional and not warranted by law, in that it inflicts and imposes a punishment as for a contempt, and subjects the defendant to imprisonment, before he can be heard by himself or counsel as to whether he may be in contempt, and is a decree final in its nature and not passed in term time.

6. " Because the Circuit judge erred in holding that there was such a continuity of proceedings as rebutted the presumption of abandonment from the lapse of time.

7. " Because the order directs the payment of a sum in gross which is more than sufficient to satisfy the claims of the plaintiffs.

8. " Because the order vests in the sheriff of Spartanburg county the right to determine whether the order is obeyed, and to that extent is a delegation of power which can rest only in the court.

9. " Because the order is repugnant to and in violation of section 14, article I. of the constitution of this State, in that it inflicts a punishment not based on the verdict of a jury.

10. " Because the process for commitment does not run in the name of the State of South Carolina, and is not tested by the seal of the court."

The second exception seems to have reference to some homestead proceedings before Judge Pressley, in which other creditors objected to the homestead assigned to the defendant. Neither the record nor Judge Pressley's rulings were in evidence before the referee, and can not in any way affect this case.

The third exception complains that the judge erred in holding that the referee could hear the cases together. We are unable to see why not. The union did not and could not injure the defendant. The course pursued by the referee not only saved time, trouble and expense to all concerned, but was precisely the proper course. Where there is more than one judgment creditor, prosecuting supplementary proceedings against the same debtor, the practice is to unite them in one proceeding. All the creditors have a common interest in the same matter. The proceeding is not technically what is called a special proceeding, but a continuation of the action in which the judgment was recovered, and in one sense a substitute for

the former creditor's bill. *Voorh. Ann. Code,* page 462 and notes. Section 318 of the code, after giving the judge the power to appoint a receiver of the property of the judgment debtor, provides: " But . before the appointment of such receiver, the judge shall ascertain, if practicable, by the oath of the party or otherwise, whether any other supplementary proceedings are pending against the judgment debtor, and if such proceedings are so pending, the plaintiff therein shall have notice to appear before him, and shall likewise have notice of all subsequent proceedings in relation to said receivership. No more than one receiver of the property of a judgment debtor shall be appointed," &c.

The fourth exception makes the point that the referee could not decide questions of law, but without specifying any particulars in which he erred in that respect. We agree with the Circuit judge that a referee, no matter how limited his powers, must sometimes necessarily decide questions of law which arise in the progress of the inquiry he is ordered to make. If he has not decided such questions wrongly and thereby prejudiced defendant's rights, there is no just ground to complain. The Circuit judge certainly had this right, and he approved all the rulings of the referee. In looking carefully through the record we can not see that the referee decided any questions of law, except those raised by the defendant himself. He moved to vacate the service of the order under which the reference was held, and now complains that the referee had no right to decide that motion. To set aside a referee's report upon such grounds would be to put proceedings in the power of those against whom they were instituted.

The first exception makes the point that the judge, at chambers, in Union county, had not the right to confirm the referee's report and grant the final order—the defendant residing, and the judgment having been recovered, and the proceedings before the referee had, in the county of . Spartanburg.

The code of procedure, in the chapter on the subject of " Proceedings supplementary to the execution," provides as follows: " Section 312. When an execution against property of the judgment debtor  *   *   *   is returned unsatisfied, the judg-

ment creditor, at any time after such return made, is entitled to an order from a judge of the Circuit court, requiring such judgment debtor to appear and answer concerning his property before such judge, at a time and place specified in the order, within the county to which the execution was issued," &c.

"Section 320. The judge may in his discretion order a reference to a referee agreed upon by the parties or appointed by him, to report the evidence or the facts, and may in his discretion appoint such referee in the first order or at any time."

"Section 318. The judge may also, by order, appoint a receiver of the property of the judgment debtor, in the same manner and with the like authority as if the appointment was made by the court according to section 265," which provides that "A receiver may be appointed by a judge of the Circuit court, either in or out of court."

"Section 317. The judge may order any property of the judgment debtor, not exempt from execution, in the hands either of himself or any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment," &c.

From these provisions it is manifest that the judge, as well as the court, may make orders in supplementary proceedings. Indeed, it seems that at least the first order for the examination of the debtor can only be made by the judge out of court. *Voorh. Code* 464, note. It seems to us also that the restriction in section 312, "within the county to which the execution was issued," relates only to the examination of the debtor. When that examination had to be made before the judge who issued the order, the place where he kept his chambers was a matter of importance with reference to the view that the debtor, compelled to answer, should not be carried out of his county to do so.

But after the power was given to the judge to appoint a referee to take the examination and "report the evidence," it ceased to be important where the judge who issued the order resided. *Wilson* v. *Andrews*, 9 *How. Pr.* 39. When the referee in this case took the examination of the debtor in Spartanburg county, and reported the evidence to Judge Wallace, the whole purpose

of the provision in the code was accomplished, and all other orders in the case "to continue and consummate the proceeding," including that made upon the evidence reported to him, could be made by the judge of the circuit at his home in Union, within the judicial district, though not in the county of Spartanburg, where the execution was issued and the examination was taken. *Crouse* v. *Wheeler*, 33 *How. Pr.* 337.

Exceptions 5, 8, 9 and 10, in different forms, make the point that the order appealed from is unconstitutional, first, as repugnant to and in violation of section 14 of the "Declaration of Rights," in that it inflicts a punishment not based upon the verdict of a jury; but if not, second, that the attachment was ordered prematurely, in being included in the same order which required the payment of the money; that it could only issue by the judge himself, after the disobedience and failure to show cause why the attachment should not issue.

If the first ground could be sustained, it would utterly defeat the whole purpose of supplementary proceedings, which, after the abolition of imprisonment for debt, were given as a sort of substitute for the old process of *capias ad satisfaciendum*. There can be no doubt that a court of record has the right to enforce its orders by attachment as for a contempt. As we understand it, that has always been the law in this State. *Ex parte Thurmond*, 1 *Bailey* 607; *Sherman* v. *Cohen*, 2 *Strobh*. 556. In the last-named case a certain sum of money was found to be in the hands of a garnishee. The court ordered him to pay it, which he refused to do, and, having no other means of enforcing it, held that it might and should be enforced by attachment for a contempt.

In delivering the judgment, Judge O'Neall said: "If the court has ordered it to be paid over (as in this case), and the defendant has failed to comply, cannot the court enforce that order? To say that it cannot would be to make the mandate of the court a sound and no more. But the case *Ex parte Thurmond*, 1 *Bailey* 606, tells us that an attachment may be issued to compel the performance of 'the orders' of a court of record. This shows that when no other remedy is given to enforce obedience, attachment is proper. The notion that a party has

sworn off the contempt in advance, and therefore the writ can not issue, is altogether wrong," &c.

We do not think that this pre-existing right of the court to enforce its own orders by attachment, was taken away by the fourteenth section of the "Declaration of Rights," in the constitution of 1868, which declares that "the general assembly shall not enact any law that shall subject any person to punishment without trial by jury." *Commissioners of New Town Cut* v. *Seabrook*, 2 *Strobh*. 564. The code of procedure, enacted soon after the constitution was adopted, and to a large extent by the same persons who framed it, gives the right in express terms. Section 322, upon this very subject of supplementary proceedings, enacts that "if any person, party or witness, disobey an order of the judge or referee duly served, such person, party or witness may be punished by the judge for contempt."

But it is urged that this view is met by that other provision of the present constitution, which forbids imprisonment for debt "except in cases of fraud"—that attachment in such case for the non-payment of money is only an indirect way of restoring the old law of imprisonment for debt. In regard to the enforcement of an order by attachment there may possibly be some difference (alluded to in some of the cases) between an order for the payment of money generally, and the delivery of property— a specific thing, such as a horse, a watch, or a note. In the former case, the order, in form at least, is something like a money decree, and as such may be supposed to run counter to the aforesaid provision of the constitution, but clearly in the latter case no such question can arise.

We consider that the order in this case to turn over the money was something more than mere process for the collection of a debt which was already in judgment, and the execution returned "unsatisfied." It was in effect an order to deliver a specific thing—specie or bank bills to a certain amount—ascertained to be in the possession or under the control of the defendant; and the superadded order to attach him in case of his disobedience, was not within the provision of the constitution against imprisonment for debt. The question in the case of *Gilliam* v. *McJunkin*, 2 *S. C.* 443, was as to the enforcement by attachment

of a mere money decree of the Probate judge, which was rendered without authority of law. Besides, may it not be said that such orders are never issued except "in cases of fraud," which are exceptional. Be that as it may, the code, as above stated, has expressly given the power, and in section 199, which prohibits arrests in civil cases, declares that "the same shall not apply to proceedings for contempt."

It only remains to consider the form of procedure adopted. It appears that there was no application made to attach the defendant after he had failed to obey the order, but the same order which required the money to be paid within two days, went on and directed in the alternative, " or that in default of such payment, (such default to be evidenced by the affidavit of the receiver, served upon the sheriff of Spartanburg county,) that said sheriff do arrest said defendant, William E. Walker, and commit and imprison him in the common jail for said county, as for a contempt of court, until he shall comply with this order or unless sooner discharged by order of court." Was this error? The code gives the right to attach for contempt, but no direction as to the form of proceeding. As to that we must look to the general law and practice.

It seems to us that there is force in the view that one, failing to obey an order, should have an opportunity to be heard upon the subject before he is punished by imprisonment. The nature of the right to attach is such—being in *stricti juris* and involving the liberty of the citizen—that in exercising it the greatest care should be observed, to the end that the subject of it should not be deprived of any privilege which the law gives him. It may be conceded that in his return to a rule to show cause why he should not be attached for disobeying the order to pay, the defendant could not renew the litigation and re-open the question of fact as to whether he had possession or control of the money, which was adjudged against him upon his answering before the referee, (*Freem. Judg.*, § 327,) but we can conceive of matters which might be shown in the return, as, for instance, that the money, after it was found to be in his possession, had been lost or destroyed without fault upon his part. It is the safer course that the judge or the court which issued the order should hear

the application for attachment, after the time fixed for its execution, and determine whether there has been in fact a default, and if so, whether any excuse which may be given should or should not be held sufficient to exonerate the party.

It is true the order in the alternative follows precisely the form for such an order given in 4 *Wait Pr.* 170 ; but it seems that the New York authorities upon this subject are not in accord.   The same author elsewhere, under the head of " Process of Contempt," states the practice as follows: " Application for an order of attachment may be made *ex parte* or on notice of motion, accompanied by copies of the papers on which it is founded.   Whether it shall issue in the first instance or on notice, is discretionary with the court or the officer granting it.   It is said, however, that the usual and more advisable course is to apply for the attachment on notice in the usual manner, or on an order to show cause.   *   *   *   The order for the attachment should merely direct the issuing of the attachment, or only declare that it appears to the court there is probable cause for issuing an attachment, to bring the defendant before the court to answer as to the alleged contempt.   It should not contain an adjudication of the court that the defendant is guilty of the contempt," &c.   4 *Wait Pr.* 181.

We see no reason why the attachment for contempt, allowed in supplementary proceedings, should not conform to the general rule.   The case of *Earle* v. *Stokes,* 5 *S. C.* 336, is the only one in our reports in which there was an attachment to enforce an order made in supplementary proceedings, and in that case there was a rule to show cause after the failure to answer. As we understand it, the practice in this State is not to attach until the party has had an opportunity to be heard.   In the case of the *State* v. *Hunt,* 4 *Strobh.* 338, which was the attachment of an attorney for contempt, the court say : " The proceeding by rule is the result of the provision contained in the act of 1811, which grew out of the commitment by Mr. Justice Grimke of the constables at Newberry in 1807, who were found absent from their posts, without requiring them to show cause.   Its provision, that no one shall be imprisoned without

hearing him, necessarily, in a case like the present, makes the proceeding by rule proper. It has the sanction of a well settled practice, and is prudent as affording cooling time and an opportunity for the interference of friends."

We do not see in the case any evidence that judgment creditors, other than the two who instituted the proceedings, were ever notified or came in as parties and proved their judgments. Neither their names nor the respective amounts of their judgments are given. The only reference made to them is the statement of the referee that "It was in testimony that there were other outstanding judgments against the defendant amounting to the sum of $4,869.14, inclusive of interest and costs." Under these circumstances we can not regard these other judgment creditors as parties to the proceeding, in such sense as to authorize an attachment in their behalf. The order to pay the money found to be in the hands of the defendant should have been limited to so much as was necessary to pay the costs of this proceeding, and the debt, interest and costs of the two judgment creditors who instituted supplementary proceedings.

It is the judgment of this court that the judgment of the Circuit Court be affirmed, in so far as it confirmed the report of the referee; but in so far as it ordered the defendant to pay the whole sum found to be in his hands, or in default thereof to be arrested and imprisoned, be set aside and the case remanded for such further proceedings as may be deemed necessary, according to the principles herein announced.